724 A.2d 903

**William FONNER, Appellant,**

v.

**SHANDON, INC. and Jendoco Construction Corporation, Appellees.**

Supreme Court of Pennsylvania.

Argued March 4, 1997.

Decided Jan. 21, 1999.

mit the complete record of this case to the governor of Pennsylvania within 90 days.

John A. Bacharach, Pittsburgh, for William Fonner.

Thomas Fallert, Jason A. Archinaco, Pittsburgh, for Shandon, Inc. and Jendoco Const. Corp.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

### OPINION OF THE COURT

CASTILLE, Justice.

The issue on appeal is whether, following changes in 1974 to the Workers' Compensation Act (the "Act")[1] that made it mandatory for employers to provide workers' compensation coverage, a general contractor is a "statutory employer" under the Act so that the general contractor is immune from suit by an injured worker for common law negligence, where the subcontractor directly employing the injured worker carried workers' compensation insurance which paid benefits to the worker. Because we find that a general contractor in this

---

1. 77 P.S. § 1 et seq.

situation is entitled to the status of a "statutory employer" under the Act, we hold that the general contractor is immune from suit and, therefore, we affirm the order of the Superior Court.

The relevant facts to this appeal are not in dispute. In 1991, Shandon, Inc. ("Shandon") owned a facility located in Findlay Township, Pennsylvania. On April 26, 1991, Shandon hired appellee, Jendoco Construction Corporation ("Jendoco"), as the general contractor for a construction project which consisted primarily of building an addition to an existing structure at the facility. In May, 1991, appellee entered into a sub-contract with Olde Cast Stone Products ("Olde Cast") for the installation of pre-fabricated concrete panels. Olde Cast, in turn, sub-contracted this work to PreCast Services ("Pre-Cast"). Appellant was employed by PreCast.

On August 2, 1991, appellant was installing the pre-fabricated concrete panels at the Shandon facility when the line on his welding equipment snagged on an unknown object. While appellant walked towards the edge of the building frame to free the snag, appellant slipped and fell off the unguarded edge of the building and onto a pile of lumber below. Appellant alleges that the fall caused him to sustain serious permanent injuries.[2] As a result of his injuries, appellant began receiving workers' compensation benefits from PreCast's workers' compensation carrier.

On March 26, 1993, appellant filed a complaint against Shandon and Jendoco for negligently failing to provide a safe work environment since neither party had placed a guardrail around the perimeter of the building as required by safety regulations. On January 31, 1995, Shandon and Jendoco filed motions for summary judgment. The trial court granted Shandon's motion and dismissed it from the case because, as the owner of the property, Shandon had no duty to maintain a safe workplace on behalf of its general contractor's employ-

2. Appellant asserts that the fall resulted in a fracture of his ninth, tenth and eleventh ribs on his left side, multiple contusions on his torso, renal contusion and a lumbosacral sprain and strain.

ees.[3] The trial court also granted Jendoco's motion for summary judgment and dismissed it from the case on the basis that Jendoco, as the general contractor, was the statutory employer of appellant who was immune from suit pursuant to Section 203 of the Act.[4]

The Superior Court, in a memorandum opinion and order, affirmed the trial court's grant of summary judgment in favor of Jendoco. We granted *allocatur* in order to decide whether, following changes in 1974 to the Act that made it mandatory for employers to provide workers' compensation coverage, a general contractor is entitled to immunity from suit for common law liability for negligence as a "statutory employer" under the Act even though the subcontractor which directly employed the injured worker carried workers' compensation insurance which paid benefits to the worker.

Section 203 of the Act, which is part of Chapter 2 of the Act (Damages by Action at Law), was last amended in 1939 and provides that:

> An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employe or contractor, shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employe.

77 P.S. § 52. The term "contractor" as used in this provision includes "a subcontractor to whom a principal contractor has sublet any part of the work which such principal contractor has undertaken." 77 P.S. § 25. In construing Section 203 of the Act, this Court, in the seminal case of *McDonald v. Levinson Steel Co.*, 302 Pa. 287, 153 A. 424 (1930), determined that the term "employer" in Section 203 was synonymous with the principal contractor for a particular job and that the term "contractor" was synonymous with the subcontractor for that

---

**3.** Appellant has not appealed this ruling by the trial court dismissing Shandon from the case.

**4.** 77 P.S. § 52.

job. This Court then described the following five elements essential to the creation of a "statutory employer" relationship so that the statutory employer would be immune from a suit for negligence:

(1) An employer who is under contract with an owner or one in the position of an owner. (2) Premises occupied by or under the control of such employer. (3) A subcontract made by such employer. (4) Part of the employer's regular business intrusted to such subcontractor. (5) An employee of such subcontractor.

*McDonald,* 302 Pa. at 294–95, 153 A. at 426. This five-part test has consistently been cited by the courts below as the test which should be applied when determining statutory employer liability.

Appellant recognizes this Court's decision in *Mc-Donald* and argues that if it were applied to this case, Jendoco would be a statutory employer which would be immune from his negligence suit. Appellant, however, argues that certain amendments to Section 302(b) of the Act,[5] which made it mandatory for employers to provide compensation coverage, implicitly amended Section 203 of the Act so that a general contractor like Jendoco is no longer a statutory employer entitled to immunity. Conversely, Jendoco argues that since Section 302(b) concerns the payment of compensation for a work-related injury, its amendment has no effect on a provision such as Section 203 which deals with the tortious liability under the Act for certain parties. Our determination of which argument is correct depends on an analysis of the relevant statutes.

Prior to the 1974 amendment to Section 302(b) of the Act, it was presumed that a contractor or an employer had agreed to pay compensation. However, the pre–1974 Section 302(b) contained what has been termed as "elective compensation" language. The elective compensation language allowed a contractor or an employer, if they met the terms of the statute, to opt not to pay compensation as called for in the Act. *See*

5. 77 P.S. § 462.

*Cranshaw Construction, Inc. v. Ghrist,* 290 Pa.Super. 286, 292, 434 A.2d 756, 759 (1981).

Section 302(b)'s elective compensation language was removed by the 1974 amendments to the Act. As noted above, the 1974 amendments made it mandatory for a contractor or an employer to secure compensation coverage for its employees. Section 302(b), as amended in 1974, provides that:

> Any employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of such employer's regular business entrusted to that employe or contractor, shall be liable for the payment of such compensation, *unless such hiring employe or contractor if primarily liable for the payment of such compensation, has secured the payment thereof as provided for in this act.* Any employer or his insurer who shall become liable hereunder for such compensation may recover the amount thereof paid and any necessary expenses from another person if the latter is primarily liable therefor.

77 P.S. § 462 (emphasis added). The employer and contractor referred to in this provision are defined the same way as in Section 203 of the Act. Appellant argues that the "unless" language which was part of the 1974 amendment to Section 302(b) implicitly amended Section 203 by adding a sixth element to the *McDonald* statutory employer test: whether the contractor or employer actually paid benefits to the injured claimant.

Appellant's argument fails for two reasons. First, despite amending Section 302(b) in 1974, the General Assembly never amended Section 203 of the Act even though existing case law allowed statutory employers to escape liability if someone else was primarily responsible for paying compensation benefits. In *Capozzoli v. Stone Webster Engineering Corp.,* 352 Pa. 183, 42 A.2d 524 (1945), this Court interpreted Section 302(b) of the Act as it existed prior to the 1974 amendment. In *Capozzoli,* the administratrix of the estate of a worker who was killed while performing his job for a subcontractor sought to recover

in a wrongful death lawsuit from a party who was found to be the deceased worker's statutory employer. This Court affirmed the dismissal of the common law suit against the statutory employer on the basis that the sole remedy against the subcontractor and the statutory employer was the payment of compensation under Section 302(b) of the Act. In doing so, this Court stated that an agreement by a subcontractor to provide for compensation insurance does not remove the statutory employer from the protection of the Act, even though it may operate to relieve the statutory employer from directly paying compensation by placing that primary responsibility upon the subcontractor. *See also Swartz v. Conradis*, 298 Pa. 343, 148 A. 529 (1929) (contractor and subcontractor agreed that subcontractor would carry compensation insurance; contractor still entitled to immunity of Section 203 from common law suit as the statutory employer of the subcontractor's injured employee since contractor assumes reserve status in case subcontractor cannot pay benefits).

■ As noted above, the amended version of Section 302(b) made it mandatory for the employer to provide coverage for its employees. However, the amended version of Section 302(b) is similar to pre-amendment case law in that the general contractor is still liable for benefits under the Act in a reserve status if the subcontractor were to default on his obligation. *See O'Boyle v. J.C.A. Corp.*, 372 Pa.Super. 1, 538 A.2d 915 (1988); *Dume v. Elkcom Company, Inc.*, 368 Pa.Super. 280, 533 A.2d 1063 (1987), *appeal denied*, 520 Pa. 583, 549 A.2d 915 (1988).

■ When confronted with questions of statutory construction, the words of a statute are to be interpreted in light of antecedent case law, and the legislative intent to effectuate a drastic change in the law is not to be inferred by mere omission and implication. 1 Pa.C.S. § 1922(4); [6] *Truck Terminal Realty Co. v. Com., Department of Transportation*, 486 Pa. 16, 23, 403 A.2d 986, 989 (1979). The failure of the

6. 1 Pa.C.S. 1922(4) provides that: "[T]hat when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language."

General Assembly to change the law which has been interpreted by the courts creates a presumption that the interpretation was in accordance with the legislative intent; otherwise the General Assembly would have changed the law in a subsequent amendment. *Commonwealth v. Willson Products, Inc.*, 412 Pa. 78, 87–88, 194 A.2d 162, 167 (1963).

Here, when the General Assembly amended Section 302(b) in 1974, it could have at the same time amended Section 203 so that a statutory employer in reserve status could only escape liability for a common law suit if the statutory employer had the direct responsibility to pay workers' compensation benefits. The General Assembly, however, did not make any changes in the 1974 or subsequent amendments to Section 203 in spite of established case law. Also, our research has disclosed of no legislative intent to alter the result of cases like *Capozzoli* where compensation was paid under the Act by a party other than the statutory employer. Thus, since the amended Section 302(b) still provides that a statutory employer can be held liable for benefits under the Act in reserve status, we must conclude that the General Assembly still intends for a statutory employer who is not directly paying benefits to the injured employee of the subcontractor to be entitled to immunity from a common law suit.

The second reason appellant's argument, that the "unless" clause of Section 302(b) adds a sixth element of actual payment of compensation to the *McDonald* statutory employer test by impliedly amending Section 203, fails is because that language was not included by the legislature in Section 203. In determining legislative intent, sections of a statute must be read together and construed with reference to the entire statute. 1 Pa.C.S. § 1921(a). When the words of a statute are free and clear of all ambiguity, the courts cannot disregard the letter of it under the pretext of pursuing the spirit of the statute. 1 Pa.C.S. § 1921(b). Also, where the legislature includes specific language in one section of the statute and excludes it from another, the language should not be implied where excluded. *Cali v. City of Philadelphia*, 406 Pa. 290, 305, 177 A.2d 824, 832 (1962). Moreover, where a section of a

statute contains a given provision, the omission of such a provision from a similar section is significant to show a different legislative intent. *Commonwealth v. Bigelow*, 484 Pa. 476, 484, 399 A.2d 392, 395 (1979).

Here, the General Assembly included the specific language of the "unless" clause in one section of the Act (Section 302(b)) but did not include it another section of the Act (Section 203). Thus, in accordance with the rules of statutory interpretation, the "unless" clause of Section 302(b) cannot be implied to amend Section 203. Furthermore, the fact that the General Assembly omitted the "unless" clause from Section 203 shows that the General Assembly had a different intent when drafting Section 203 (extending immunity to statutory employer from negligence cases) than it did when drafting Section 302(b) (providing security for payment of benefits to injured employee). Moreover, as a leading commentator on the Act observed:

> The language creating the statutory employe status is the same in both sections but there is lacking in Section 203 the language in Section 302(b) that allows for a shifting of responsibility conditionally when it is "otherwise expressly agreed." Thus, in negligence cases, the general contractor has full immunity from suit by the employee of a subcontractor which an immediate employer would have. He is the statutory employer and is the insured employe's employer for negligence immunity purposes and is secondarily liable for compensation even though the immediate employer or some other intermediate subcontractor ... is insured and responds fully on the injured employe's claim. The reason for this difference ... must be that, since the general contractor remains statutorily liable, although only in reserve status, in return for this he has the statutory employer's immunity from statutory employe negligence in suits in all events.

1 Barbieri, Pennsylvania Workmen's Compensation and Occupational Disease, § 4.09(3).

█ Therefore, since the General Assembly has chosen not to amend Section 203 and since the "unless" language of

Section 302(b) cannot be read as impliedly amending Section 203 where that language is not included in Section 203, this Court must conclude that a general contractor is still entitled to its historic immunity as a "statutory employer" from suit for common law negligence. This is true even though the subcontractor which directly employed the injured worker carried workers' compensation insurance which paid benefits for the worker's injuries.[7]

Here, the trial court found that Jendoco, the general contractor, was a statutory employer of appellant since it met the five part test established by this Court in *McDonald*. This conclusion is supported by the record and appellant offers no facts which would cause this Court to disturb this conclusion for an abuse of discretion.[8] Thus, since Jendoco was appellant's statutory employer, it was entitled to immunity from appellant's negligence suit.

Accordingly, for the reasons stated above, we affirm the order of the Superior Court affirming the trial court's entry of summary judgment in favor of Jendoco.

Justice NIGRO files a dissenting opinion.

NIGRO, Justice, dissenting.

Since I find that the Majority's holding is contrary to the legislative intent of the 1974 amendments to the Act and

7. Our decision today is consistent with the case law of the intermediate appellate courts on this issue since the 1974 amendment to Section 302(b) of the Act. *See McGrail v. Workmen's Compensation Appeal Board (County of Lackawanna)*, 145 Pa. Commw. 595, 604 A.2d 1109, *appeal denied*, 531 Pa. 658, 613 A.2d 562 (1992); *Dume v. Elkcom Company, Inc.*, 368 Pa.Super. 280, 533 A.2d 1063 (1987), *appeal denied*, 520 Pa. 583, 549 A.2d 915 (1988); *Zizza v. Dresher Mechanical Contractors, Inc.*, 358 Pa.Super. 600, 518 A.2d 302 (1986), *appeal denied*, 516 Pa. 643, 533 A.2d 714 (1987); *Bartley v. Concrete Masonry Corp.*, 322 Pa.Super. 207, 469 A.2d 256 (1983); *Cranshaw Construction, Inc.*, 290 Pa.Super. 286, 434 A.2d 756.

8. In the fact section of his brief, appellant asserts that Jendoco meets all of the elements of the *McDonald* statutory employer test except number three; a subcontract by such employer. Appellant however, does not develop this issue any further and he failed to raise this as an issue on appeal to the Superior Court. Thus, appellant has waived this issue.

allows for an unjust and inadequate result, I must dissent. The purpose of the 1974 amendments was to prohibit an employer, contractor or employee from rejecting application of the Act. In eliminating the "elective compensation" language from the Act, its application became mandatory. The impetus of this change was to afford protection to employees. The Legislature never intended that the amendments would allow a general contractor to escape civil liability if it did not pay for the injured employee's workers' compensation insurance. I find the clear meaning of the 1974 amendments was to place responsibility for workers' compensation benefits upon the general contractor *only where* the subcontractor or direct employer failed to do so. In reality, application of these amendments rarely, if ever, will result in the general contractor assuming responsibility for providing workers' compensation insurance because in the modern construction workplace, general contractors will rarely, if ever, award a contract absent the subcontractor showing proof of workers' compensation coverage. Common sense and logic dictate that the general contractor should not reap the benefits of civil liability immunity unless it undertakes responsibility of compensation coverage. If however, a general contractor does assume responsibility for the payment of workers' compensation, then it should be afforded statutory employer immunity.

In the present matter, application of the 1930 *McDonald* five part test leads to the conclusion that Appellee should be deemed the statutory employer and thus immune from civil liability. I submit, however, that in order to properly effectuate the legislative intent of the 1974 amendments and not foster an inadequate result, a sixth element should be considered. The sixth element requires the general contractor to show proof it assumed responsibility for providing workers' compensation to the injured employee before statutory employer immunity attaches. I believe the Legislature by its amendments essentially added the sixth element in order to prevent the type of inequitable result which occurred today.

As Judge Hoffman stated more than thirty years ago,

... very great care ... must be exercised before allowing an employer to avoid its liability at common law by asserting that he is a statutory employer. Section 203 of the Workmen's Compensation Act, which was designed to extend benefits to workers, should not be casually converted into a shield behind which negligent employers may seek refuge.

*Stipanovich v. Westinghouse Electric Corporation*, 210 Pa.Super. 98, 106, 231 A.2d 894, 898 (1967).