**[J-21-2021] [MO: Todd, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| GREENWOOD GAMING & ENTERTAINMENT, INC., | : | No. 19 MAP 2020 |
| | : | |
| | : | Appeal from the Order of the |
| Appellee | : | Commonwealth Court at No. 531 FR |
| | : | 2017 dated February 20, 2020 |
| | : | Granting Exceptions and entering |
| v. | : | judgment of the October 16, 2019 |
| | : | decision which Reversed the |
| | : | decision of the Finance and |
| COMMONWEALTH OF PENNSYLVANIA, | : | Revenue dated May 10, 2017 at |
| | : | Nos. 1622419 & 1622420. |
| Appellant | : | |
| | : | ARGUED:  April 13, 2021 |

**CONCURRING OPINION**

**JUSTICE WECHT**                                    **DECIDED:  November 17, 2021**

I join the Majority Opinion in full.  I write separately to highlight two points not mentioned by the Majority that have influenced my decision.

First, while I agree with the Majority that concert tickets are not "services" as that term is used in the Gaming Act,[1] my analysis differs slightly.  I find it significant that elsewhere in the Gaming Act the General Assembly used the word "entertainment" in addition to "services."  Specifically, the Act defines the term "gaming junket"[2] to mean an arrangement made by an enterprise or individual who, among other things, "[r]eceives complimentary services or gifts from a slot machine licensee for participation in the

---

[1]     4 Pa.C.S. § 1103 (explaining that "gross terminal revenue" does not include "[a]ny personal property distributed to a player as a result of playing a slot machine. This does not include travel expenses, food, refreshments, lodging or services").

[2]     Junket operators are entities that receive commissions or other payments from casino operators in exchange for promoting the casino to high-value gamblers.

arrangement, including the costs of transportation, food, lodging or entertainment." 4 Pa.C.S. § 1103. But if the word "services" necessarily (and unambiguously) includes entertainment, as the Commonwealth argues, then there would have been no reason to clarify in the "gaming junket" definition that "services or gifts" includes entertainment costs. The inclusion of "entertainment" here is especially noteworthy because we generally assume that a term mentioned in one section of a statute but excluded in another was intentionally omitted.[3] For this reason, I agree with the Majority's conclusion that the concert tickets Greenwood gifted to its patrons were not "services" under the Act.

The second point I would add to the Majority's analysis is that this Court is not in any way bound by the Department of Revenue's own interpretation of the Gaming Act. A 2015 Gaming Tax Bulletin issued by the Department of Revenue informed casinos that:

> this bulletin is revised to clarify that pursuant to 4 Pa.C.S. § 1103 definitions of "gross table game revenue" and "gross terminal revenue"; deductibility of promotional items is limited to the actual cost of personal property excluding travel expenses, food, refreshments, lodging, and services. As a result of these limitations, promotional giveaways involving services such as venue services and event tickets are not deductible.[4]

This administrative guidance is not controlling here. As I have explained many times in the past,[5] this Court is not bound by an administrative agency's interpretation of

---

[3]     See Fonner v. Shandon, Inc., 724 A.2d 903, 907 (Pa. 1999) ("[W]here the legislature includes specific language in one section of the statute and excludes it from another, the language should not be implied where excluded.").

[4]     Gaming Tax Bulletin 2015-01, PA. DEPT. OF REVENUE, at 1, https://www.revenue.pa.gov/TaxLawPoliciesBulletinsNotices/TaxBulletins/Gaming/Docu ments/gaming_tax_bulletin_2015-01.pdf.

[5]     See, e.g., Harmon v. Unemployment Comp. Board of Rev., 207 A.3d 292, 310 (Pa. 2019) (Wecht, J., concurring) ("I do not agree that reviewing courts should afford what often amounts to unqualified deference—i.e., Chevron deference—to an executive-branch agency's interpretation of an ambiguous statute." (footnote omitted)); Snyder Bros. v. Pa. Pub. Util. Comm'n, 198 A.3d 1056, 1083 (Pa. 2018) (Wecht, J., concurring) ("In cases involving ambiguous statutory language, the interpretation suggested by an

an ambiguous statute, though we certainly may consider the agency's interpretation and adopt it if we find it persuasive.[6] The Commonwealth's argument that we must unconditionally defer to the interpretation that the Department of Revenue proffers unless it is "clearly erroneous" is a nonstarter.

But even if one supposes that reviewing courts should sometimes place great weight on an agency's interpretation of an ambiguous statute, this is not one of those times. That's because "[t]he fair measure of deference to an agency administering its own statute has been understood to vary with circumstances, and courts have looked to the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position[.]" *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001) (footnotes omitted). Considering these factors, no deference can or should be given to the Department of Revenue's 2015 Gaming Tax Bulletin here.

First, the meaning of the term "services" does not implicate agency expertise. No one argues, for instance, that "services" is a term of art in the gaming industry. Second, the persuasive value of the Bulletin is low, since it flatly declares that "event tickets are not deductible" without any real analysis of the relevant statutory text. Third, the informality of the agency's interpretation is problematic, since non-legislative rules like "manuals, interpretive memoranda, staff instructions, policy statements, circulars,

---

agency charged with administering the statute may be considered, but the meaning of a statute is essentially a question of law for the court." (citation omitted)); *Crown Castle NG East LLC v. Pa. Pub. Util. Comm'n*, 234 A.3d 665, 686 (Pa. 2020) (Wecht, J., concurring) (expressing "deep and broad misgivings" about our administrative deference jurisprudence); *SEDA-COG Joint Rail Auth. v. Carload Express, Inc.*, 238 A.3d 1225, 1248-49 (Pa. 2020) (Wecht, J., concurring) (same).

[6] *See* 1 Pa.C.S. § 1921(c)(8) ("When the words of the statute are not explicit, the intention of the General Assembly *may* be ascertained by considering, among other matters . . . [l]egislative and administrative interpretations of such statute." (emphasis added)).

bulletins, advisories, and press releases" are entitled to far less deference than formal regulations promulgated through ordinary rulemaking processes.[7]  Finally, the 2015 Bulletin was published after the tax year at issue in this appeal, and it appears to have been issued specifically because Greenwood prevailed in an earlier stage of this litigation—a practice that calls into question the Department's objectivity.[8]  *See generally Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988) ("Deference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate."); *County of Butler v. CenturyLink Commc'n, LLC*, 207 A.3d 838, 854 (Pa. 2019) (Wecht, J., concurring) (rejecting the notion that courts should defer to an interpretation that an agency develops during litigation).  For these reasons, the Department of Revenue's 2015 Gaming Tax Bulletin is of little or no persuasive value here.

In sum, while my own analysis includes these additional points not mentioned in today's decision, I nevertheless join the Majority Opinion in full.  I agree that the concert tickets at issue here are not services and therefore are deductible under the Gaming Act.

Justice Donohue joins this concurring opinion.

---

[7]  *Harmon*, 207 A.3d at 300 (plurality) ("Non-legislative rules, also known as 'interpretive rules' or 'guidance documents,' . . . are accorded 'a lesser quantum of deference[,]' also known as *Skidmore* deference, which allows an agency's interpretation to be disregarded when a court is 'convinced that the interpretative regulation adopted by an administrative agency is unwise or violative of legislative intent.'" (cleaned up; footnote omitted)).

[8]  *See Gaming Tax Bulletin 2015-01* at 1 ("This bulletin is issued . . . as a result of the Pennsylvania Supreme Court's April 28, 2014 decision in *Greenwood Gaming and Entertainment Incorporated v. Commonwealth of Pennsylvania, Department of Revenue*, (90 A.3d 699 (Pa. 2014)) for Gaming Tax purposes.").